# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

Treasure Island, LLC,

    Petitioner

v.

Local Joint Executive Board of Las Vegas; Culinary Workers Union, Local, 226,

    Respondents

Case No.: 2:18-cv-00898-JAD-GWF

**Order Confirming Arbitration Award and Denying Remaining Motions**

[ECF Nos. 15, 17, 19]

Treasure Island, LLC (Employer) petitions to vacate a labor arbitration award that Arbitrator John D. Perone entered in an arbitration challenging Shawndee Alvarado's termination.[1] Employer raises two issues for vacatur: (1) the award does not draw its essence from the Collective Bargaining Agreement (CBA) between Employer and the respondent labor organizations (Union), and (2) the Arbitrator twice exceeded the boundaries of the issues that the parties submitted to him. Union counter-petitions to enforce the award.[2]

Employer and Union each use a different procedural device to address the merits of their respective petitions: Union moves for judgment on the pleadings[3] and Employer moves for partial summary judgment.[4] The upshot of these motions is that the parties agree that the record is now complete for a final determination on the merits. Union also moves for sanctions under FRCP 11, arguing that Employer's petition is frivolous because it seeks what it can't have:

---

[1] ECF No. 9 (first-amended petition).
[2] ECF No. 7.
[3] ECF No. 15.
[4] ECF No. 17.

judicial review of the merits of the Arbitrator's factfinding and interpretation of the CBA.[5] Because I find the Employers' challenges to the arbitration award meritless, I enter summary judgment in Union's favor and against Employer, deny as moot Union's motion for judgment on the pleadings, deny Union's motion for Rule 11 sanctions, and confirm the arbitration award in its entirety.

**I.      Union's motion for judgment on the pleadings and Employer's summary-judgment motion [ECF Nos. 15, 17]**

Because the arbitration process is the foundation "to stable collective bargaining relationships, courts reviewing labor awards afford a 'nearly unparalleled degree of deference' to the arbitrator's decision."[6] "This deference applies to both the arbitrator's interpretation of the parties' agreement and to his findings of fact."[7]

On the topic of contract interpretation, the Supreme Court has admonished that "the parties have authorized the arbitrator to give meaning to the language of the agreement, so a court should not reject an award on the ground that the arbitrator misread the contract."[8] "[T]ak[ing] this instruction to heart," the Ninth Circuit has instructed that, "even if [the court] [is] convinced that the arbitrator misread the contract or erred in interpreting it, such a conviction would not be a permissible ground for vacating the award."[9] This means that, "as long as the

---

[5] ECF No. 19.

[6] *Sw. Reg'l Council of Carpenters v. Drywall Dynamics, Inc.*, 823 F.3d 524, 530 (9th Cir. 2016) (quoting *Motors of Walnut Creek v. Auto. Machinists Lodge No. 1173*, 886 F.2d 1200, 1204–05 (9th Cir. 1989) (en banc)).

[7] *Id.* at 530.

[8] *Id.* (quoting *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 38 (1987)).

[9] *Id.* (quoting *Va. Mason Hosp. v. Wash. State Nurses Ass'n*, 511 F.3d 908, 913–14 (9th Cir. 2007)).

2

arbitrator is even arguably construing or applying the contracting and acting within the scope of his authority,' his award must be upheld."[10]

The parties also bargained for an arbitrator, not a court, to be the factfinder, so "improvident, even silly, factfinding . . . is hardly a sufficient basis for disregarding what the agent appointed by the parties determined to be the historical facts."[11] "Because of this precept, a court is barred from disregarding the arbitrator's factual determinations, let alone supplementing them with its own."[12]

Due to these constraints on the district court's authority to review a labor arbitration award, the Ninth Circuit has found that vacatur is justified in only four circumstances:

> (1) when the award does not draw its essence from the [CBA] and the arbitrator is dispensing his own brand of industrial justice; (2) where the arbitrator exceeds the boundaries of the issues submitted to him; (3) when the award is contrary to public policy; or (4) when the award is procured by fraud.[13]

Employer argues that vacatur is warranted here because the award doesn't draw its essence from the CBA and the Arbitrator twice exceeded the boundaries of the issues submitted to him.

**A.     The arbitration award draws its essence from the CBA.**

"An arbitration award draws its essence from the agreement if the award is derived from the agreement, viewed in the light of the agreement's language and context, as well as other indications of the parties' intentions."[14] The crux of Employer's argument is that the Arbitrator

---

[10] *Id.* (quoting *Misco*, 484 U.S. at 38).

[11] *Id.* (brackets omitted) (quoting *Misco*, 484 U.S. at 39).

[12] *Id.* (quotation omitted).

[13] *Id.* (quoting *S. Cal. Gas Co. v. Util. Workers Union of Am., Local 132, AFL-CIO*, 625 F.3d 787, 792–93 (9th Cir. 2001)).

[14] *Sanchez v. Elizondo*, 878 F.3d 1216, 1222 (9th Cir. 2018) (quotations omitted).

3

"explicitly rejected and refused to apply Article[s] 6 and 23 of the CBA . . . and fashioned a modified penalty that appealed to his own notion of right and wrong."[15]

Section 23 of the CBA authorizes Employer to manage its business and the direction of its employees.[16] It also authorizes Employer to "establish and administer reasonable rules, regulations and procedures governing the conduct of employees, provided that such rules, regulations[,] and procedures are not inconsistent with any provisions of this Agreement."[17] Section 6.01(a) of the CBA provides that "[n]o regular employee . . . shall be disciplined and/or discharged except for just cause. The Employer shall follow a system of progressive discipline[,]" which "normally requires, prior to suspension or discharge, that an employee be given a written opportunity to correct the deficiency . . . ."[18] But, § 6.01(a) continues: "[T]he Employer may impose immediate suspension or discharge for . . . drinking alcohol or use of controlled substance, or being under the influence thereof, during the employee's shift."[19] Section 6.01(b) then provides that "[w]here there is reasonable cause to believe that an employee is under the influence of alcohol or a controlled substance, the employee, after being notified of the contents of this subsection, must consent to an immediate physical examination at an independent medical facility or suffer the penalty of discharge."[20] Finally, "[a] positive *gc/ms*

---

[15] ECF No. 17 at 10.
[16] ECF No. 17-3 at 57, § 23.01.
[17] *Id.* at § 23.02.
[18] *Id.* at 17, § 6.01(a).
[19] *Id.*
[20] *Id.* at 18, § 6.01(b).

4

blood test for a controlled substance provides an absolute presumption that an employee is under the influence of the identified controlled substance."[21]

Employer argues that the Arbitrator left the essence of the CBA behind when he "refuse[d] to apply the absolute presumption in Article 6."[22] Employer bases its argument on select quotes from the fourth paragraph of the findings and conclusions part of the award.[23] The Arbitrator's complete statement in this paragraph is that

> The Arbitrator also finds he concurs with Counsel for the Union that a requirement that any controlled substance in the employee's system results in an "absolute presumption that she is under the control of said substance. . ." The undersigned Arbitrator finds this conclusion is too broad and possibly oxymoronic to effect industrial capital punishment of discharge. In this case the Grievant was not shown to be under the influence of marijuana (the cause for the testing) or a small amount of codeine (1/2 a pill) taken the morning for which she was allegedly underwent an incomplete drug test lacking the requirement to be a "gc/ms blood test."[24]

Although this statement is clumsily worded, my take away from it is not that the Arbitrator was refusing to apply the absolute presumption, but that the absolute presumption that an employee is under the influence because she tested positive for a controlled substance alone doesn't constitute the "just cause" that Employer needs to terminate the employee under § 6.01(a). I also interpret this statement to mean that the Arbitrator found that Employer wasn't entitled to an absolute presumption under these circumstances because it failed to demonstrate that the test given to Alvarado was the "gc/ms blood test" that § 6.01(b) requires to trigger the absolute presumption that an employee is under the influence of a controlled substance.

---

[21] *Id.*

[22] ECF No. 17 at 10.

[23] *Id.* at 10–11.

[24] ECF No. 17-4 at 18.

5

The Arbitrator explains in the next paragraph that the drug test was improper because "Employer did not act with reasonable cause in ordering [it]" and the test that was conducted wasn't "the proper gc/ms blood test . . . ."[25] So, the Arbitrator found that the test didn't "have any significant weight and, in fact[,] permits the possibility of . . . the false drug test."[26] Just why the Arbitrator felt that Employer lacked the "reasonable cause" it needed under § 6.01(b) to test Alvarado for drugs is evident one page earlier in the award where he found that certain evidence—notes from another employee "of his reflection of the events and conversation with" Alvarado on the night in question—had no weight because that evidence was not authenticated and was inconsistent with the video evidence.[27]

I am not persuaded that the Arbitrator ignored, refused to apply, or rejected any provision in the CBA. Nor am I persuaded that he weighed the amount of substance present in the employee at all, let alone did so because he believed that was a better way to determine if her termination was justified.[28] Employer plainly interprets the CBA as providing that the absolute presumption that an employee was under the influence of a controlled substance during her shift supplies the "just cause" that the Employer needs under the CBA to terminate the employee.[29] The Arbitrator disagreed with Employer's interpretation and found on the facts before him that Employer was not entitled to an absolute presumption that Alvarado was under the influence of a

---

[25] *Id.*

[26] *Id.*

[27] *Id.* at 17–18.

[28] ECF No. 17 at 11.

[29] This interpretation seems to be what Employer is getting at when it argues that the Arbitrator refused to "apply" the absolute presumption.

6

controlled substance during her shift. Thus, Employer has not demonstrated that the arbitration award fails to draw its essence from the CBA.

### B. The Arbitrator did not exceed the boundaries of the issues submitted to him.

Employer's final argument for vacatur is that the Arbitrator exceeded the boundaries of the issues that the parties submitted to him. The Arbitrator stated in his award that, "[a]t the hearing, the parties stipulated that the issues before the Arbitrator would be framed as follows: *Was there just cause for the Grievant, Shawndee Alvarado, to be terminated and, if not, what is the proper remedy?*"[30] This is the same issue statement that the parties verbally stipulated to on the record at the outset of the arbitration hearing.[31] The problem, Employer argues, is that during its opening statement, Union "made two key stipulations" of fact on which Employer relied.[32] First, that Union did not contest that a marijuana joint was discovered in Alvarado's coin purse on January 3, 2016.[33] Second, Union conceded that the drug-test results were accurate.[34] Employer argues that Union's "conduct created an agreement with [Employer] to limit the Arbitrator's authority to decide the issue by accepting these stipulations" and that the Arbitrator committed a procedural error when he ignored this agreement limiting the issues before him.[35]

The first statement was made in the context of explaining what happened when Alvarado dumped the contents of her tip jar into her coin purse and brought that purse to the cashier, and the cashier found debris. Counsel stated that "[t]he cashier apparently thought that this cigarette

---

[30] ECF No. 17-4 at 5.
[31] ECF No. 17-5 at 3 (6:13–20 of the transcript).
[32] ECF No. 17 at 14.
[33] *Id.*
[34] *Id.* at 2. Employer later states that what Union conceded is that "the test results were inaccurate." ECF No. 17 at 14. This appears to be a typo.
[35] *Id.* at 14–15.

7

butt, or whatever it was, smelled like marijuana.  The Grievant didn't notice that, but we don't contest it, and the cashier brought that to the attention of management at some point."[36]  The second statement, made in the context of explaining Alvarado's drug test, was that "[t]he Union doesn't contend that the test was inaccurate."[37]  Counsel went on to say that "[a]lthough, we can see on the testing results that it doesn't actually give a level of this drug that was in her system.  It doesn't tell us how much.  It just indicates a positive test."[38]  So, counsel concluded, the "results seem to be not very detailed, but we don't contend that it's inaccurate.  But it does appear that this drug testing company had some recordkeeping problems, to say the least."[39]

Neither statement can be fairly construed as a stipulation or agreement by the parties to set new boundaries for the issues they submitted to the Arbitrator.  Employer did contend in its post-arbitration brief, which the parties used in place of closing arguments, that these were among the key undisputed facts.[40]  But, as Union explains, these statements were made before any evidence had been presented, so they were merely a "preview" of what Union expected the evidence would show.[41]  None of the cases that Employer cites supports its argument that the scope of the issues submitted to an arbitrator can be narrowed in this manner.[42]  In any event, the transcript of the arbitration hearing and Employer's post-arbitration brief reflect that it vetted

---

[36] ECF No. 17-5 at 4 (12:03–08 of the transcript).
[37] *Id.* at 5 (14:17–18 of the transcript).
[38] *Id.* (14:18–21 of the transcript).
[39] *Id.* (14:21–25 of the transcript).
[40] ECF No. 17-6 at 9.
[41] ECF No. 20.
[42] ECF No. 17 at 15.

8

these issues despite contending that they were undisputed. Employer has thus failed to show that the Arbitrator exceed the boundaries of the issues that the parties submitted to him.

Employer has not demonstrated that it is entitled to judgment as a matter of law on either ground it argues to vacate the arbitration award. Although Union has not moved for summary judgment on either ground raised in the petition for vacatur, or on its counter-petition to enforce the award, I exercise my discretion under Federal Rule of Civil Procedure 56(f) to sua sponte grant summary judgment on these issues in favor of Union. Rule 56(f) requires a court to first give a party "notice and a reasonable time to respond" before granting a non-moving party summary judgment, but I find that the merits of both issues were sufficiently addressed by the briefing on Employer's summary-judgment motion and Union's motion for judgment on the pleadings, and the record is sufficient to permit my full review.[43] I thus grant summary judgment in favor of Union and against Employer on the two grounds raised in the petition for vacatur, confirm the arbitration award in its entirety, and deny as moot Union's motion for judgment on the pleadings.

## II. Union's motion for sanctions under FRCP 11 [ECF No. 19]

Finally, Union moves for sanctions under FRCP 11, arguing that Employer's petition for vacatur is frivolous and has no legal basis. Sanctions may be imposed under FRCP 11 if the court determines that a filing is frivolous, legally unreasonable, or brought for an improper

---

[43] 10A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2720.1 (4th ed. 2018) ("Entering a judgment when there has been a motion but no cross-motion is somewhat different from the situation in which neither party has moved under Rule 56 and the court wishes to act sua sponte. When there has been a motion but no cross-motion, the judge already is engaged in determining whether a genuine dispute as to material fact exists and the parties have been given an opportunity to present evidence designed either to support or refute the request for the entry of judgment.").

purpose.[44]  Union's motion is procedurally correct, but both sides use it primarily as a vehicle to rehash their merits arguments.  Employer's "unambiguous" and "plainly" arguments cause its petition to approach the line of frivolity; it is well established that a court's perception that an arbitrator erred in reading or interpreting the agreement is not a permissible ground for vacating the arbitration award.[45]  And Employer's argument that the Arbitrator exceed his bounds strains credulity.  But, in the end, the Arbitrator's clumsily worded findings and conclusions left open the door for Employer's objectively reasonable belief that it would prevail on its petition for vacatur.  Although the question of Rule 11 sanctions in this case is a close one, I am not persuaded that the petition for vacatur is entirely frivolous.

## Conclusion

Accordingly, IT IS HEREBY ORDERED that Treasure Island, LLC's motion for partial summary judgment **[ECF No. 17] is DENIED; however, summary judgment is sua sponte entered in favor of Local Joint Executive Board of Las Vegas and Culinary Workers Union, Local, 226 (Respondents) on the two grounds raised for vacatur of the arbitration award.**

IT IS FURTHER ORDERED that Respondents' motion for judgment on the pleadings **[ECF No. 15] is DENIED as moot.**

IT IS FURTHER ORDERED that Respondents' motion for sanctions **[ECF No. 19] is DENIED.**

---

[44] *Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1362 (9th Cir. 1990).

[45] *Sw. Reg'l Council of Carpenters*, 823 F.3d at 530.

IT IS FURTHER ORDERED that the arbitration award is CONFIRMED in its entirety. The **Clerk of Court** is directed to **ENTER JUDGMENT** in the Respondents' favor and **CLOSE THIS CASE**.

Dated: March 31, 2019

_____
U.S. District Judge Jennifer A. Dorsey